No. 2445.

Dave Fahey v. The State.

1. Constitutional Law—Occupation Tax on Retailing Liquors.—Under the Acts of March 11, 1881, and April 4, 1881, the appellant was prosecuted for pursuing the occupation of selling liquors in quantities less than a quart, without paying the tax required by law and without license, etc. He excepted to the indictment on the ground that the said Acts of 1881 are violative of the Constitution of the State in two respects; first, because they contain more than one subject, and embrace subjects not expressed in their titles; and, second, because, as a condition precedent to engaging in such business, the said Acts require the tax thereon to be paid in advance for the term of a year, but permit the tax on other occupations to be paid quarterly, and require a license to pursue said business, but permit others to be pursued without a license, and therefore are repugnant to the constitutional requirement of equality and uniformity in taxation. But held that neither of these objections to the said Acts of 1881 is tenable, nor are the said Acts repugnant to the Fourteenth Amendment of the Constitution of the United States. See the opinion in extenso for a lucid exposition of the principles and precedents which maintain the constitutionality of the said enactments.

2. Same—"Subject" of Legislative Acts.—The present Constitution of Texas provides that "No bill (except general appropriation bills, etc.,) shall contain more than one subject, which shall be expressed in its title." Held that an Act may, without contravening this inhibition, contain or contemplate more objects than one.

3. Equality and Uniformity of Occupation Tax.—Section 1 of article 8 of the State Constitution expressly empowers the Legislature to impose occupation taxes, and section 2 of the same article requires that such taxes shall "be equal and uniform upon the same class of subjects within the limits of the authority levying the tax." These provisions do not necessitate equality and uniformity as between different classes of occupations, nor require the imposition upon every class of the same conditions precedent to their lawful pursuit; and therefore the requirement from retail liquor dealers of a license and of prepayment of the tax for a year does not contravene the said constitutional provisions, though these conditions be not imposed upon other occupations. So, also, one county may, without infringing said provisions, levy a larger county tax upon an occupation than is levied on the same occupation by other counties.

4. Charge of the Court.—The trial court instructed the jury to convict in case they found that the defendant (within the alleged venue and dates) pursued the occupation of selling spirituous, vinous and malt liquors, in quantities less than a quart, " without having paid the

Statement of the case.

occupation tax of three hundred dollars to the State and one hundred and fifty dollars to the county of Galveston, and the said taxes were then due and owing and unpaid to the State and county respectively;' and further instructed the jury that the penalty was by a fine of not less than four hundred and fifty dollars, nor more than nine hundred dollars. Appellant assails these instructions because they substitute the phrase " without having paid the tax " in lieu of the phrase "without having obtained a license." *Held* that the substitution was to appellant's advantage, and affords him no cause for complaint.

5.  SAME.—It was also objected that the instructions assumed as a fact that the county of Galveston had levied on the appellant's occupation a county tax of one half the tax levied on it by the State. The record, however, shows that the appellant admitted that fact on the trial, and that the State consequently introduced no other proof of it. *Held* that the objection is not tenable.

6.  SAME—PENALTY.—Objection was taken to the penalty as stated in the instructions, viz: a fine of not less than four hundred and fifty dollars nor more than nine hundred dollars. *Held* that the instruction was correct, inasmuch as the State tax was three hundred dollars and the county tax one hundred and fifty dollars, aggregating four hundred and fifty dollars, which was the minimum and the double of which was the maximum of the fine prescribed by the statute.

APPEAL from the Criminal District Court of Galveston. Tried below before the Hon. Gustave Cook.

By indictment it was charged that, in the county of Galveston, on January 18, 1887, the appellant " unlawfully and wilfully did pursue and follow the occupation of selling spirituous, vinous and malt liquors in quantities less than one quart, and did then and there sell spirituous, vinous and malt liquors to persons whose names are to the jurors unknown (the same being an act taxed by law), without first having obtained a license therefor; and that the said Dave Fahey has not paid tax or obtained a tax receipt or license therefor; and that said Dave Fahey is indebted to the State of Texas in the sum of three hundred dollars, occupation tax for pursuing said occupation, and to the said county in the sum of one hundred and fifty dollars, occupation tax for pursuing said occupation, and that the commissioners court of Galveston county levied a tax on said occupation, one half the amount levied by the State on said occupation; contrary," etc.

In the opinion of this court will be found the exceptions taken by the defense to the indictment, and also the exceptions taken to the instructions given to the jury by the trial court.

The inculpatory testimony was conclusive and unquestioned, and there is no occasion to set it out here. The jury assessed the punishment at a fine of four hundred and fifty dollars. The printed arguments of counsel for both sides of this case are characterized by much research and ability, but are so elaborate that space can be allowed for no more than the leading propositions and the corresponding citations.

*Gresham, Jones & Spencer,* for the appellant: The court erred in not quashing the indictment,

1. Because the laws of March 11, 1881, and April 4, 1881, levying the occupation tax and providing for the issuance of a license is unconstitutional and void, in this, that said acts contain more than one subject, to wit, the exercise of the police power and that of taxation for general revenue, and embrace subjects not expressed in the titles of the bills. (Gen. Laws, 1881, pp. 21–112; Const., art. 3, sec. 35; Const., art. 8, sec. 1; Ex Parte Mabry, 5 Texas Ct. App., 98; Cannon v. Hemphill, 7 Texas, 207; San Antonio v. Gould, 34 Texas, 49; Giddings v. San Antonio, 47 Texas, 548; State ex re. Jones v. Lancaster Co., 6 Neb., 474; State v. McCann, 4 Lea, 1; State ex re. Drury v. Halleck, 12 Pac. Rep., 832; Skinner v. Wilhelm, 6 West Rep., 367; Boom Co. v. Prince, 24 N. W., 361; S. C., 10 Am. & Eng. Corp. Cases, 391; Reader v. Township of Union, 39 N. J., 509; People ex re. Stewart v. Father Math. Soc., 41 Mich., 67; State v. Bowers, 14 Ind., 195; Igoe v. State, 14 Ind., 239; Grubbs v. State, 24 Ind., 295; Rogers v. Manf. Imp. Co. 1 Cent. R., 144; Lane v. State, 8 Cent. R., 639; Dorsey's Appeal, 72 Pa. St., 192; Ragio v. State, 6 S. W. R., 401; Matter of Sockett, 74 N. Y., 95; Walker v. State, 49 Ala., 329; Ex Parte Thomason, 20 N. W. R., 312; Peck v. San Antonio, 51 Texas, 490.)

Said acts are unconstitutional in this, that they require the said payment of the tax to the State, county and city, in advance, for the term of one year, as a condition precedent to the right of pursuing said occupation, while all others are permitted to pay quarterly; and is in conflict with and repugnant to sections 13 and 19, Bill of Rights, and to sections 2 and 3, article 8, of the State Constitution, and the fourteenth amendment to the Constitution of the United States; and they are inimical to the Constitution in this, that they require a license of persons pursuing the occupation of the appellant and of the billiard table keeper, and require none of persons pursuing any of the

other occupations taxed by law, and provide no means of obtaining a license by such other persons. (Wharton's Com., sec. 13; 1 Kent's Com., 460; Cooley's Const. Lim., 391; Ex parte Westerfield, 55 Col., 550; The State v. Hammer, 42 N. J., L., 435; Com. v. Pottan, 88 Penn. State., 258; Stein v. Foltz, 5 Central Rep., Penn., 283; The State v. Board of License, 4 Central Rep., N. Y., 83; Ragio v. The State, 6 S. W. Rep., 401; Morrison v. Buchert, 3 Central Rep., 117; The State v. Anderson, 3 Western Rep., Ohio, 605; City of Scranton v. Silkman, 4 Central Rep., 317; Bank of State v. Cooper, 2 Yerg., 599; Wally v. Kennedy, 3 Yerg., 555; The State v. Duffy, 7 Nev., 342; Slaughter House Cases, 16 Wall., 67.)

The indictment is defective in not alleging that the defendant had not procured a license before the finding of the indictment; and it also fails to state in what quantities the defendant sold the liquor. (Penal Code, art. 112.)

The sixth and seventh assignments of error call in question the correctness of the charge of the court. The court gave the following charge: "If the evidence satisfies the jury beyond a reasonable doubt that the defendant did, as charged in the indictment, pursue, in the county of Galveston, State of Texas, the occupation of selling spirituous, vinous and malt liquors in quantities less than a quart, between the first day of October, 1886, and the filing of the indictment in this case, to wit: the twenty-fourth day of January, 1887, without having paid the occupation tax of three hundred dollars to the State and one hundred and fifty dollars to the county of Galveston, and that said tax was then due, owing and unpaid to the State and county respectively — say you find the defendant guilty as charged in the indictment, and assess the punishment, which is a fine not less than four hundred and fifty dollars nor more than nine hundred dollars."

It is rare to find in so short a charge so many errors.

First. The offense denounced is not the selling of spirituous, vinous and malt liquors without first paying the tax; but without first obtaining a license therefor. (Lewis v. The State, 14 Texas Ct. App., 232; Penal Code, art. 110.)

Second. The court charged that if the defendant pursued the occupation between the first of October, 1886, and the twenty-fourth of January, 1887, and the tax was "then due, owing and unpaid," he must be found guilty; when the charge on this point should have been: "and the tax was due, owing

and unpaid on the twenty-fourth of January, 1887," and defend-
ant had obtained no license, find him guilty, etc. (Penal Code,
art. 112.)

The court also erred in charging upon the weight of the evi-
dence, as follows: "without having paid the occupation tax of
three hundred dollars to the State and one hundred and fifty
dollars to the county of Galveston * * * say you find the
defendant guilty as charged in the indictment, and assess the
punishment, which is a fine not less than four hundred and
fifty dollars nor more than nine hundred dollars."

The amount of tax as levied by the county, if any, was a
question of fact that the court could not take judicial knowl-
edge of nor assume as a fact proven. The charge should have
been: "If the jury believe from the evidence that the defend-
ant did pursue the occupation without having first obtained a
license, you will find him guilty and assess the penalty, which
is a fine in any sum not less than the amount of the tax so due
on January 24, 1887, if any, and not more than double that sum."
(Penal Code, art. 112.)

The court also erred in adding the amount alleged to be due
the county to the penalty, because that part of the penalty is
not affixed to the offense by any written law of this State. To
hold otherwise is to make the act a special law and unconstitu-
tional. To illustrate: A person committing the offense in
Brown county (supposing said county to have levied no occu-
pation tax) would be punished by a fine of not less than three
hundred dollars, nor more than six hundred dollars; if in Gal-
veston county not less than four hundred and fifty dollars nor
more than nine hundred; if in Galveston city and county not
less than six hundred nor more than twelve hundred; and all
for identically the same act of the defendant. (Penal Code,
art. 3.)

The court should have granted a new trial because the offense
charged in the indictment is for pursuing the occupation of
selling spirituous, vinous and malt liquors in quantities less
than a quart, without first having obtained a license therefor.
The verdict and judgment are for pursuing the occupation of
selling spirituous, vinous and malt liquors without license or
without having paid the tax due.

*W. L. Davidson*, Assistant Attorney General, for the State:
Appellant moved to quash the indictment in the court below,

and the motion was overruled. He assigns error on this ruling of the trial court.

1, Because the laws of March 11, 1881, and April 4, 1881, levying the occupation tax, and providing for the issuance of a license, are unconstitutional and void; in this, that said acts contain more than one subject, to wit, the exercise of the police power and that of taxation for general revenue, and embrace subjects not expressed in the titles of the bills.

The above stated proposition of appellants is based upon the anterior propositions: 1, That the taxing power of the legislative body is a separate and distinct power from that of police regulation; 2, that, being separate powers, their domain and limits are so sharply defined and marked that the one can not be called to aid the other by the Legislature in exercising the inherent sovereignty lodged in that body in matters of taxation and police regulations, and that in no emergency can the one be used as the adjunct to the other in collecting the assessed revenues of the State; 3, that no act of the Legislature can embrace matters not expressly set out in the title.

It may be admitted as a general proposition that the taxing power is a separate power from that of police regulation, and equally so is the right of eminent domain. They have, as a general rule, a different operation, pursue a different channel, and attain different ends. However distinct their power and authority may be, and however wide they may diverge when considered as questions of inherent sovereignty, yet they have the same origin and spring from the same source. All the authorities agree that the right of eminent domain, the taxing power, the police regulation, all have their origin in and spring from necessity. All endorse the doctrine that the above enumerated powers are the strongest evidences of state sovereignty, and lie back of all law, organic or statutory. All the authorities agree that these powers are unlimited in the Legislature, unless specially curtailed by the express provisions of the Constitution. It is a proposition not to be doubted that the Legislature have the authority inherent to exercise proper legislation with reference to eminent domain, to levy taxes and provide for the collection of the same, both on property and professions, pursuits and occupations, subject only to constitutional restrictions. It is equally certain that the "necessity" is to be judged of by the Legislature, and that their action is final, unless in plain, clear, and unequivocal terms that action

is contrary to constitutional limitations. (Tiedeman, Lim. on Police Power, pp. 371–378; Id., pp. 1–4; Id., pp. 461–482; also 467–471; Potter's Dwarris on Stat. and Cons., pp. 444–467; Cooley, Con. Lim., pp. 598, 673–676; Cooley on Taxation, pp. 1, 4, 384, 512.)

Article 8 of the Constitution of 1876 does not affect this prerogative, nor alter this authority, except as therein set out. The exemptions therein set out do not touch the question at issue, nor apply thereto. The limitations mentioned in that article of our Constitution, and exemptions therein specified, are (1) mechanical and agricultural pursuits, and (2) that cities, towns and counties can only levy one-half of State tax on occupations; (3) it also requires taxation to be uniform. This is fundamental any way in a free government.

Upon the question as presented the Constitution says the Legislature may levy occupation taxes. This neither adds to nor detracts from the inherent power of the Legislature to levy taxes upon occupations. It is not a limitation upon legislative authority. When the Constitution does not limit the power to tax, the Legislature can not be controlled in this respect by any co-ordinate branch or department of the government, because it is independent of the other departments, and in this matter is supreme. I speak only of State governments and sovereignties.

Is a State law levying an occupation tax, and requiring a license to be procured before pursuing that occupation, void and unconstitutional because said law invokes the taxing and police power at the same time and in the same law?

The constitutionality of a law is presumed; and, as a conflict between the Constitution and the statute is not to be implied, it follows "that the court, if possible, must give the statute such a construction as will enable it to have effect." (Cooley's Con. Lim., side p. 183; Ex Parte Mabry, 5 Texas Ct. App., 9b; Newland v. March, 29 Ill., 384 )

As our Constitution does not limit the Legislature in levying occupation taxes, it would follow that the tax complained of is properly levied, and is not subject to criticism from this standpoint. (Texas Con., 1876, art. 8; Cooley's Con. Lim., 598; Cooley on Tax., '84.)

"Necessity" is the common source of the taxing power as well as of police regulation. It would follow that no arbitrary rule can be laid down that will or can make them antagonistic to each

other; and it would follow that, being grounded in necessity and in the inherent power of government, they can and are often called to aid and assist each other. Then, when relegated to fundamental laws of inherent authority, complete sovereignty of the Legislature, and the underlying law of necessity and self preservation, and not being abridged by the Constitution of these powers, it would follow that, having their origin in these common sources, the taxing power and police authority can not be arbitrarily separated, or be made to stand out opposed to each other by judicial construction or decision.

The position assumed by appellant in his able brief is that these two great powers are antagonistic and can not be called to the aid of each other—that is, that the Legislature can levy the tax by virtue of its taxing power, but that it can not call into requisition the police authority to enforce the collection of that tax by virtue of the same act of the Legislature. In other words, that an act of the Legislature that sought to enforce the collection of the tax levied by that act, by requiring the license to be procured before following that occupation, would be void as antagonistic to article 3, section 35, of the State Constitution, and that in no emergency can the Legislature blend the taxing and police power, because it would be obnoxious to said article and section of the Constitution. This idea is fundamentally wrong. (Cooley on Tax., 66; Lane Co. v. Oregon, 7 Wall., 71; State v. Parker, 32 N. Y., 426; Eyre v. Jacob, 14 Gratt., 422; Davey v. Galveston County, 45 Texas, 291; Ex Parte Cooper, 3 Texas Ct. App., 489; Ex Parte Mabry, 5 Texas Ct. App., 93; Willson's Crim. Stats., sec. 195; Cooley on Tax., 385; License Tax Cases, 5 Wall., 472.)

In speaking of taxes, their nature and kinds, Mr. Cooley says: "They may be intended to discourage trades and occupations which may be useful and important when carried on by a few persons under stringent regulations, but exceedingly mischievous when thrown open to the general public and engaged in by many persons. An example is the heavy tax imposed in some States and in some localities of other States on those who engage in the manufacture or sale of intoxicating drinks. Two purposes are generally had in view in imposing such a tax: to limit the business to a few persons, in order to more efficient and perfect regulation, and also to produce a revenue. A tax laid for the double purpose of regulation and

revenue must be grounded in both police and the taxing power." (Cooley on Taxation, p. 11.)

Thus it will be seen that in almost all phases of taxation and police regulation the one is aid to the other. If one is the leading object, the other is made to assist in attaining it. In many matters the two powers seem to blend naturally and are often necessary adjuncts to each other. It would seem that it is immaterial which is the leading object.

This same question seems to be not a novel one in this State. Nearly every tax law passed since the organization of our State government has been attacked on the same ground—that is, that the law has two objects or subjects expressed in the title, and other matters in the body of the bill not mentioned in the title. Our Supreme Court thus speaks of it: "It is also insisted that the act is unconstitutional because it embraces two objects, both of which are expressed in its title. The number of cases in which the court has been called upon to consider similar objections to other laws renders it unnecessary to say little more than that this objection can not be maintained. The act embraces, as we think, but one leading object. All its provisions are subsidiary to, and legitimately connected with, and tend to effect and enforce this main object, which is sufficiently, clearly and definitely expressed in the title. The constitutionality of the act, as we have just said, was directly before the court shortly after its enactment; and the fact that no objection of this kind was then made to it by counsel or the court, and that it has been ever since recognized as a valid and constitutional enactment, is strongly persuasive that the objection is without force. Legislation of a similar character, both in respect to the title and the subject matter of the act, has, it is believed, been of frequent occurrence; and it has been too long recognized and enforced to be lightly set aside or annulled by the courts." (Davey v. Galveston County, 45 Texas, 298.)

"It can not be denied that appellant was engaged in an occupation for the pursuing of which he might be required by law to procure a license, and upon which an occupation tax could be imposed by the Legislature. The amount of such tax, the manner of collecting it, and the purposes to which it should be applied when collected, are matters of legislative discretion. We can not say that the laws enacted by the Legislature to effect these purposes are unconstitutional, unless they are clearly shown to be in conflict with some provision of that in-

strument; nor can the court say that the Legislature may not assess the amount of tax it intends levying by different acts, in which the amount collected under one act may be appropriated differently from that imposed by the other." (Id., 299.)

This court has been called on also in several cases to decide this same question. In reviewing the cases and authorities bearing on this matter the court said: "We are of opinion that the act under consideration embraces but one leading subject, which is expressed in the title, and that all of its provisions are subsidiary to, and legitimately connected with, and tend to effect and enforce the main subject embraced in the title of the act; and that all the different sections may be construed to be in harmony with the main subject expressed in the title, including the enforcement of a compliance by the penal sanctions provided in the third section for its enforcement against those who disregard its provisions, 'the leading object of the law being to tax the privilege of keeping or harboring dogs, and to provide for an assessment and collection thereof.'" (Ex parte Mabry, 5 App., 99, 100; See also Giddings v. San Antonio, 47 Texas, 548; Albrecht v. State, 8 App., 216; Johnson v. State, 9 App., 249; Thompson v. State, 17 App., 253.)

With reference to the giving the bond and its conditions, it may be held that they are the required steps to be taken before the issuance of the license, and it would be immaterial whether the same are or are not expressed in the title. (Cooley, Cons. Lim., p. 181; People v. Briggs, 50 N. Y., 566; Phillips v. Bridge Co., 2 Met., Ky., 222; Smith v. Com., 8 Bush., 112; Ex parte Upshaw, 45 Ala., 234; Ex parte Mabry, 5 App., 93, and authorities there cited.)

The bond required in the two acts of March 11 and April 4, 1881, has been held a good bond by our Supreme Court. (Goldsticker v. Ford, 62 Texas, 385.) Under the act of 1887, this court held that the bond must be given and the license taken out by the party desiring to pursue the occupation of selling liquor. (Ex parte Bell, 24 App., 428.) Upon these questions the indictment is valid, and not objectionable on the grounds of the motion as presented.

Are the laws unconstitutional because the advance payment of the tax for one year as a condition precedent to appellant's engaging in the occupation of liquor selling is required, while for other occupations quarterly payments in advance are per-

mitted? Under the authorities already cited and quoted, said laws are not unconstitutional, and can not be so held. The government may tax one occupation or it may tax all. There is no restriction upon its power in this regard unless one is expressly imposed by the Constitution. (Cooley on Taxation, p. 384; Butler's Appeal, 73 Penn. St., 448.)

It is not special class legislation, because it bears equally upon every one who engages in that particular occupation. None are exempt from its provisions and penalties, but all are required to comply with its provisions and all are forced to pay the tax in advance as demanded by the statute. It is uniform and bears alike on all who engage in that business. (Bohl v. The State, 3 App., 683; Thompson v. State, 17 App., 253.)

The Legislature can levy one amount upon one occupation, another amount upon another occupation, and require its payment in advance either annually or quarterly, and as long as that tax is uniform and equal upon all who engage in the named occupation, it will be uniform and not repugnant to the Constitution.

Another objection urged to the indictment is that it is defective in not alleging that the defendant had not procured a license before the finding of the indictment. Appellant cites and relies upon Penal Code, article 112. The indictment does allege the fact that the defendant pursued the occupation without having obtained a license therefor. Appellant was indicted under article 110 of the code for failing to obtain his license before engaging in the occupation denounced. It was only necessary to bring the indictment within the rule laid down in that article. It is not required to set out in the indictment the negative matters of defense enumerated in article 112 of the code. Those matters, by being placed in a separate statute or article, became defensive matters, and the pleader is relieved of the necessity of pleading same, and the further necessity of negativing them. (Lewis v. The State, 7 Texas Ct. App., 567; Zallner v. The State, 15 Texas Ct. App., 23.)

But where exceptions are embraced in the enacting clause, the indictment should negative each of said exceptions. (Duke v. The State, 42 Texas, 455; Woodward v. The State, 5 Texas Ct. App., 296.)

The State is required to allege, by proper averments, that a defendant has pursued the given occupation of retail liquor dealer in selling in quantities less than one quart, without first

having obtained his license therefor; and if the city or county or both are to be taken into account, then it is proper to allege the legal amount of taxes levied on said occupation by said county or city or town. This being done, the proof would be that the party charged had followed and engaged in said occupation without obtaining his license, and that the county and city had levied the proper tax thereon, and the State's case is made out.

The defendant must avoid this by showing that he had brought himself within the exceptions laid down in article 112 of the code. It would hardly be contended that he, having paid the taxes and costs of prosecution, would be exonerated from the penalty denounced by article 110. The license is the *sine qua non* before engaging in the business. (Penal Code, arts. 110, 112; Acts Seventeenth Legislature, 1881, p. 34.)

The punishment denounced and affixed by article 110 is not less than the amount nor more than double the amount of the taxes so due. It will be observed that the words "so due" in said article 110, in order to be properly understood in connection with article 112, and in showing the legislative intent, should be held to have the same meaning as if that expression read "so levied." It is clear that the Legislature was intending to affix a penalty and to give a criterion for assessing the penalty. It did not mean to say or to convey the idea that the tax must be unpaid and owing or unsatisfied. It only defined the offense and fixed the rule for determining the punishment for the failure to obtain the license.

The exception to the charge is not taken so as to require a reversal of this case, even should the charge be defective, as claimed in the bill of exceptions. This is a misdemeanor. In order to secure any advantage of the supposed error or weakness in the charge, the appellant must not only reserve his bill of exception thereto, but he must request a special charge covering the supposed defect in said charge. (Forrest v. The State, 3 Texas Ct. App., 252; Work v. The State, 3 Texas Ct. App., 233; Richards v. The State, 3 Texas Ct. App., 423; Lloyd v. The State, 19 Texas Ct. App., 321.)

HURT, JUDGE. This is a conviction for pursuing and following the occupation of selling spirituous, vinous and malt liquors, in quantities less than one quart, without first having obtained a license therefor, and without having paid the tax required by

law. . This prosecution is based upon the acts of March 11, 1881, and April 4, 1881.

Appellant moved to quash the indictment upon several grounds:

1.  Because the laws of March 11, 1881, and April 4, 1881, levying the occupation tax and providing for the issuance of a license, are unconstitutional and void in this, that said acts contain more than one subject, to wit: the exercise of the police power and that of taxation for general revenue, and embrace subjects not expressed in the titles of the bills.

2.  Said acts are unconstitutional in this, that they require the said payment of the tax to the State, county and city in advance for the term of one year as a condition precedent to the right of pursuing said occupation, while all others are permitted to pay quarterly; and are in conflict with and repugnant to sections 13 and 19 of the Bill of Rights, and sections 2 and 3, article 8, of the State Constitution, and the fourteenth amendment to the Constitution of the United States, in this, that they require a license of persons pursuing the occupation of appellant, and of the billiard table keeper, and require none of persons pursuing any of the other occupations taxed by law, and provide no means for obtaining a license by such other persons.

First ground:

Do the acts of March 11, 1881, and April 4, 1881, contain more than one subject? If so, they are void. The Constitution provides that "no bill shall contain more than one subject, which shall be expressed in the title.". (Art. 3. sec. 35.) In the preceding Constitution the word "object" was used instead of the word "subject."

Judge Bonner, in Stone v. Brown (54 Texas, 341), observes that "it may be presumed that the convention had some reason . for substituting a different word from that which had been so long in use in this connection; and that in the light of judicial expressions the word 'subject' may have been thus substituted as less restrictive than 'object.'" In The People v. Lawrence (36 Barbour, 192), the Supreme Court of New York say: "It must not be overlooked that the Constitution demands that the title of an act shall express the *subject*, not the *object*, of the act. It is the matter to which the statute relates and with which it deals, and not what it proposes to do, which is to be found in the title: It is no constitutional objection to a statute

that its title is vague or unmeaning as to its *purpose,* if it be sufficiently distinct as to the matter to which it refers."

What, then, is the subject of the acts of March 11, 1881, and April 4, 1881? Most clearly the subject of these acts is the regulation of the sale of spirituous, vinous and malt liquors and medicated bitters. Now, if there be but one subject in the act, but more than one object, the act would not be obnoxious to the Constitution.

We could concede, for the argument, that the object of these acts is to regulate the sale of these liquors, to collect revenue and divers other purposes and objects; still, unless there was more than one subject in the act, it would be valid—constitutional.

Again: Suppose that there be more than one subject mentioned in the acts. If they be germain or subsidiary to the main subject, or if relative directly or indirectly to the main subject—have a mutual connection—and are not foreign to the main subject, or so long as the provisions are of the same nature and come legitimately under one general denomination or subject, we can not hold the act unconstitutional. (Giddings v. San Antonio, 47 Texas, 556; Breen v. R. R. Co., 44 Texas, 306; Austin v. R. R. Co., 45 Texas, 267; Phillips v. Bridge Co., 2 Met., Ky., 222; Smith v. Commonwealth, 8 Bush, 112; State v. County Judge, 2 Iowa, 284; Battle v. Howard, 13 Texas, 345; Murphy v. Menard, 11 Texas 678; Tadlock v. Eccles, 20 Texas, 792.)

We are of opinion that these acts do not contain more than one subject.

Second Ground:

"That the acts above cited require payment of the tax in advance for the term of one year as a condition precedent to the right of pursuing said occupation, while all others are permitted to pay quarterly; and hence in conflict with and repugnant to sections 13 and 19 of the bill of rights, and sections 2 and 3, of article 8, of the State Constitution, and the fourteenth amendment to the Constitution of the United States, in this, that they require a license of persons pursuing the occupation of appellant and of the billiard table keeper, and require none of persons pursuing any other occupation taxed by law, and provide no means for obtaining a license for such persons."

Answer to these objections:

1.  The Constitution confers the power upon the Legislature to impose occupation taxes.  (Art. 8, Sec. 1.)

2.  But all occupation taxes must be equal and uniform upon the same class of subjects within the limits of the authority levying the tax.   (Sec. 2, Art. 8.)

Upon this occupation the State tax is the same all over the State, and if a county desires to impose a tax upon this occupation it must be equal and uniform over the county—that is, all persons must be required to do and perform the same things as acts precedent to the right to pursue the occupation in said county, and they must pay the same amount of tax—neither more nor less.   So within the limits of cities and towns.

It is evident that the tax imposed upon the occupation of selling in quantities less than one quart the liquors named in the acts cited is equal and uniform in the State; and it appears from this record that it is equal and uniform within the limits of Galveston county.  The Legislature is the authority levying the State tax; the county of Galveston, through the commissioners court, is the authority levying the county tax within the county limits.   The tax being equal and uniform in every particular over the State as to the State tax, and being equal and uniform within the limits of the county of Galveston, instead of being obnoxious to the State Constitution, these acts are in strict conformity with its requirements.

The above observations apply to the objection that the persons proposing to follow this occupation must pay in advance for the term of one year as a condition precedent to the right to pursue it; while upon all others they are permitted to pay quarterly.  This being required of all of the same class alike, the Constitution is by no means infringed; and in addition to this the requirement is founded in the highest considerations of public policy and common sense.

It is insisted that the tax is unequal and not uniform, "because a person pursuing the occupation in some counties would not be required to pay as much as in others; that the cities and counties are not required to assess this tax, and if they do, they may assess it at a greater or less sum in the different cities and counties, etc., and, as the penalty depends on the amount assessed, it would not be the same, it would not be uniform over the State."  This is evidently correct, but constitutes no objection to the law.

In the Banking & Insurance Company v. The State (42

Texas, 636) an analogous question arose. The State sued the company for occupation tax. The company interposed a constitutional objection to the tax, contending that it was not equal and uniform throughout the State. The statute provided that those pursuing such occupation should pay a tax of two hundred and fifty dollars, if the business was carried on in a city or town exceeding five thousand in population. Galveston, the city in which the occupation was followed, contained a population greater than five thousand. The act also provided that, if the population was less, a tax of fifty dollars should be paid.

The Supreme Court (opinion by Moore, J.) held that such a tax was equal and uniform; and this opinion is approved in Blessing v. City of Galveston. (Id., 641.) These opinions were rendered under the preceding Constitution, which contained this provision: "Taxation shall be equal and uniform throughout the State." The present Constitution settles this question beyond all controversy, there being a special provision relating to occupation taxes, which is: "all occupation taxes shall be equal and uniform upon the same class of subjects within the limits of the authority levying the tax." The limit of the State's legislative authority is the whole State; that of the county, city or town is their respective boundaries.

That the State tax is equal and uniform is not questioned here. Now, if the tax imposed by the counties, cities and towns is equal within their limits, the imposition of such tax would not be obnoxious to the Constitution, but would be in exact accord with the above provisions, though in other counties, cities or towns the tax may not be the same.

So far as the fourteenth amendment of the Constitution of the United States is concerned, it certainly was not intended to prohibit the States from enacting laws regulating the traffic in these liquors, so long as they do not abridge the privileges or immunities of citizens of the United States, or deprive any person of life, liberty or property, without due process of law, or deny any person within its jurisdiction the equal protection of laws. These acts do none of these things. If they do, then the State would not have the right to tax one occupation greater than another, nor to require a license or bond as conditions precedent to the pursuing of any occupation, unless such requirements were made of persons proposing to pursue any oc-

11

cupation. If this be the proper construction of the amendment, then the text writers, and supreme courts and legislatures of most, if not all, the States have misconstrued it; for acts with like provisions in substance have been passed by nearly if not all the States, and have been upheld by the highest judicial authority thereof. Nor can a case be found, we assert, holding that, because of such provisions in an act, to wit: requiring payment in advance for one year, etc., such payment not being required for all occupations, is an infringement of the fourteenth amendment to the Federal Constitution.

Third ground:

"That the indictment is defective because it does not charge that defendant had not purcured a license *before* the finding of the indictment." The indictment alleges every element of the offense. This is no exception or proviso in the enacting clause: it is matter contained in article 112 of the Code, and is defensive in its character; hence the accused must bring it forward, or it must appear on the trial that the taxes have been paid—this being a question of fact and not of pleading.

Appellant excepted to the following charge:

"If the evidence satisfies the jury beyond a reasonable doubt that the defendant did, as charged in the indictment, pursue in the county of Galveston, State of Texas, the occupation of selling spirituous, vinous and malt liquors in quantities less than a quart, between the first day of October, 1886, and the twenty-fourth day of January, 1887 (the date of filing the indictment), without having paid the occupation tax of three hundred dollars to the State, and one hundred and fifty dollars to the county of Galveston, and the said taxes were then due, and owing, and unpaid, to the State and county respectively, say you find the defendant guilty as charged in the indictment, and assess his punishment, which is fine not less than four hundred and fifty dollars, nor more nine than hundred dollars." The objections are, first, that the charge does not correctly define the offense; and second, it does not give the penalty correctly, and is upon the weight of evidence, etc.

Appellant being charged with pursuing the occupation without license, counsel for appellant contend that the charge is incorrect, because it substitutes "without having paid the tax" for "without having obtained a license," etc. If appellant had in fact paid the taxes and procured the license as required by article 112, as amended March 15, 1881, he could not have been

convicted, though he may not have had a license. This being so, the charge was more favorable to him than the law.

It is urged that the charge assumed a fact to have been proven, and is therefore upon the weight of evidence. The court, in its charge, does assume that the commissioners court of Galveston county had assessed a tax of one half of the State tax upon the occupation. That such a tax had been assessed there can be no doubt; this was admitted by appellant on the trial, and the State introduced no evidence to prove it because of its admission. This being the case, the court did not err in assuming this to be a fact. Nor did the court err in charging that the penalty was not less than four hundred and fifty dollars, nor more than nine hundred dollars—this proposition depending upon the foregoing.

We find no error in the judgment, and it is affirmed.

*Affirmed.*

Opinion delivered January 30, 1889.