(292 S.W.)

**STATE v. PIONEER OIL & REFINING CO.
et al.   (No. 793—4453.)**

Commission of Appeals of Texas, Section A.
March 16, 1927.

**1. Taxation ⬦=552½—Delinquent tax is "lia-
bility" to state, within constitutional prohibi-
tion against extinguishing liabilty to state
(Const. art. 3, § 55).**

A delinquent tax is a "liability" to the state,
within Const. art. 3, § 55, prohibiting Legisla-
ture from releasing or extinguishing any in-
debtedness, liability, or obligation to the state.

[Ed. Note.—For other definitions, see Words
and Phrases, First and Second Series, Liabil-
ity.]

**2. Licenses ⬦=32(2)—"Liability" to state for
occupation tax on gasoline sales in April,
1923, accrued May 25, and could not there-
after be extinguished by repealing statute
(Acts 38th Leg. [1923] c. 134, §§ 3–5, 9;
Const. art. 3, § 55; Acts 2d Called Sess. 38th
Leg. [1923] c. 55).**

Occupation tax on wholesale sales of gaso-
line, authorized by Acts 38th Leg. (1923) c.
134, for the month of April, 1923, became due
and constituted "liability" to the state, within
Const. art. 3, § 55, on March 25, 1923, in view
of sections 3–5, 9, which liability Legislature
could not thereafter extinguish by repeal of
such statute by act effective June 1, 1923 (Acts
2d Called Sess. 38th Leg. c. 55).

**3. Constitutional law ⬦=70(3)—Courts are not
concerned with wisdom or burdens involved in
statute, in passing on its constitutionality.**

In determining whether a statute is consti-
tutional, courts are not concerned with wisdom
or degree of burdens involved in the law.

**4. Constitutional law ⬦=48—Statute is valid,
or is so presumed, unless it is irreconcilable
with Constitution.**

A statute is valid, or is so presumed, un-
less its provisions cannot be reconciled with
pertinent constitutional mandates or restric-
tions.

**5. Constitutional law ⬦=48—Meaning which
makes statute, susceptible of two interpreta-
tions, valid must be adopted.**

If statute is susceptible of two interpreta-
tions, one of which makes it valid, meaning
which will make it valid must be adopted.

**6. Constitutional law ⬦=48—Statutes ⬦=176—
Court may disregard mere lack of grammar
to uphold constitutionality of statute, and al-
ter collocation, give words unusual meanings,
and transpose sentences and clauses (Rev. St.
1925, art. 11).**

Under Rev. St. 1925, art. 11, mere lack of
grammar must be disregarded to uphold consti-
tutionality of statute, and collocation may be
altered, words given a possible though unusual
meaning, and transposition of words and claus-
es may be resorted to, when the sentence or
clause is without meaning as it stands.

**7. Licenses ⬦=16(9)—Statute imposing occu-
pation tax on gasoline sales by "wholesale
dealers" includes retail dealers (Acts 38th
Leg. [1923] c. 134, §§ 1, 2).**

"Wholesale dealer," as defined by Acts 38th
Leg. (1923) c. 134, §§ 1, 2, authorizing occupa-
tion tax of one cent per gallon on gasoline sold
by wholesale dealers, includes retail dealers.

[Ed. Note.—For other definitions, see Words
and Phrases, First and Second Series, Whole-
sale Dealer.]

**8. Statutes ⬦=47—Statute imposing occupa-
tion tax on gasoline sold for "consumption"
held not void for ambiguity (Acts 38th Leg.
[1923] c. 134).**

Acts 38th Leg. (1923) c. 134, authorizing
occupation tax of one cent per gallon on gaso-
line sold for "consumption" within the state,
held not void for ambiguity because of use of
word "consumption," since such word may con-
template ultimate use to which all intermediate
ones lead, and sale at wholesale may be a sale
"for consumption," as against contention that
it implies immediate use or destruction.

[Ed. Note.—For other definitions, see Words
and Phrases, First and Second Series, Consume
—Consumption.]

**9. Licenses ⬦=8(1)—Statute authorizing occu-
pation tax on gasoline "sold for consumption
in this state" held intended to read "sold with-
in this state for consumption," and so read is
not ambiguous (Acts 38th Leg. [1923] c. 134,
§§ 1–3).**

Acts 38th Leg. (1923) c. 134, § 3, authoriz-
ing occupation tax of one cent per gallon on
gasoline "sold * * * for consumption with-
in this state," may be transposed to read "sold
within this state for consumption," to carry out
legislative intent disclosed by sections 1 and 2,
and, as so transposed, is not ambiguous.

**10. Statutes ⬦=47—Statute imposing occupa-
tion tax on gasoline sold for "consumption
within this state" held not void for ambiguity
(Acts 38th Leg. [1923] c. 134, § 3).**

Even if provision of Acts 38th Leg. (1923)
c. 134, § 3, authorizing occupation tax on gaso-
line "sold * * * for consumption within this
state," may not properly be transposed to read
"sold within this state for consumption," to
carry out legislative intent, it is not void for
ambiguity.

**11. Licenses ⬦=7(3)—Statute authorizing oc-
cupation tax on sale of gasoline held not void
for inequality; "wholesale" (Acts 38th Leg.
[1923] c. 134, §§ 1–5, 9; Const. art. 8, § 2).**

Word "wholesale," as used in Acts 38th
Leg. (1923) c. 134, § 3, has same meaning as
given to it in sections 1 and 2, hence all gaso-
line sold in state, with certain exceptions, must
be reported, under sections 4, 5, and 9, and tax
paid thereon, regardless of whether business of
dealer be such as would ordinarily be classed as
"wholesale" or retail, or both, as against con-
tention that statute produces inequality, as be-
tween wholesale and retail dealers, in violation
of Const. art. 8, § 2.

[Ed. Note.—For other definitions, see Words
and Phrases, First and Second Series, Whole-
sale.]

---

⬦=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**12. Licenses** ⊂⇒**7(3)—Omission of one doing same things from class subjected to occupation tax violates constitutional prohibition against inequality (Const. art. 8, § 2).**

If the things done constitute in one person or corporation the taxed occupation, no one doing the same things can be omitted from the class taxed without a violation of prohibition against inequality of Const. art. 8, § 2.

**13. Constitutional law** ⊂⇒**70(1)—Court cannot say that legislative classification is not legitimate, unless there is no fair reason therefor.**

Legislature has power reasonably to classify persons or things for purposes of legislation, and court must assume that Legislature acted on legitimate grounds of distinction in making classification, if any such grounds exist in fact, and, before it can interfere, it must be able to say that there is no fair reason for the law that would not, with equal force, require its extension to others whom it leaves untouched.

**14. Commerce** ⊂⇒**57—Right to engage in interstate business may not be precluded or made burdensome by state legislation.**

Opportunity and privilege of engaging in interstate business is a federal right, which may not be precluded or made burdensome by state legislation.

**15. Commerce** ⊂⇒**63—Nomenclature applied is unimportant in determining whether tax burden unlawfully interferes with interstate commerce.**

Nomenclature applied is unimportant in determining whether a tax burden, whatever guise it may have, unlawfully interferes with interstate commerce.

**16. Licenses** ⊂⇒**7(2)—Statute authorizing occupation tax on gasoline sales held not void for inequality because applicable to intrastate commerce only (Acts 38th Leg. [1923] c. 134; Const. art. 8, § 2).**

Acts 38th Leg. (1923) c. 134, authorizing occupation tax of one cent per gallon on gasoline sold for "consumption" within the state, *held* not void for inequality, within Const. art. 8, § 2, because made applicable to intrastate commerce only.

**17. Licenses** ⊂⇒**8(2)—Occupation tax on sales of gasoline in May, 1923, did not accrue until June 25, and repeal of statute, effective June 1st, precluded enforcement of "liability" therefor (Acts 38th Leg. [1923] c. 134; Const. art. 3, § 55; Acts 2d Called Sess. 38th Leg. [1923] c. 55; Acts 3d Called Sess. 38th Leg. [1923] c. 5.**

Occupation tax on sales of gasoline, authorized by Acts 38th Leg. (1923), c. 134, as measured by sales during May, 1923, if act had remained in force, did not constitute "liability" to state, within Const. art. 3, § 55, and remained inchoate until June 25, 1923, and enforcement of liability respecting such sales was precluded by repeal of statute effective June 1, 1923 (Acts 2d Called Sess. 38th Leg. c. 55), notwithstanding saving clause in subsequent act effective June 14, 1923 (Acts 3d Called Sess. 38th Leg. c. 5).

Error to Court of Civil Appeals of Third Supreme Judicial District.

Action by the State of Texas against the Pioneer Oil & Refining Company and another. Judgment for plaintiff for part of taxes sued for was reversed by the Court of Civil Appeals (273 S. W. 615), and plaintiff brings error. Judgment of the Court of Civil Appeals reversed, and judgment of the district court reformed, and, as reformed, affirmed.

Dan Moody, Atty. Gen., and Ernest May, Asst. Atty. Gen., for the State.

Batts & Brooks, of Austin, for defendants in error.

NICKELS, J. At its regular session, 1923, the Thirty-Eighth Legislature enacted a statute (chapter 134), whose more important sections read as follows:

"Section 1. The term 'wholesale dealer' as used in this act is hereby defined as any person, firm, association or corporation in the state of Texas, who produces, refines, buys or compounds what is commercially known as gasoline or any of its substitutes or who receives, distributes, delivers, sells or offers to sell such gasoline or any of its substitutes within the state of Texas, and shall include any producer, refiner, manufacturer, or compounder of such gasoline or any of its substitutes, who sells the same at retail direct or through an agent to the consumer or any person, firm, association or corporation within the state of Texas who receives, imports, transports, delivers, sells or offers to sell any such gasoline or any of its substitutes that has been transported by any means, system or method into the state of Texas from any other state, territory or nation if said gasoline or any of its substitutes as above defined has ceased to be an interstate commerce shipment.

"Sec. 2. An occupation tax equal to one cent upon each gallon sold by wholesale dealers, as defined by this act, for consumption within this state is hereby imposed upon what is commercially known as gasoline and all substitutes therefor by whatever name known, sold, manufactured, refined, derived, prepared or compounded from petroleum.

"Sec. 3. Every wholesale dealer, as herein defined, shall on or before the 25th day of each month transmit to the comptroller of public accounts a report under oath (on such forms as the comptroller of public accounts shall prescribe) of the total number of gallons of gasoline, or such gasoline substitutes, sold at wholesale for consumption within this state during the preceding month, and shall at the same time pay to the treasurer of this state an amount equal to one cent upon each gallon of such gasoline, or gasoline substitute, so sold during the preceding month."

By section 9 it is provided that "the first report and payment required under this act shall be made on or before May 25, 1923," but that the act itself shall become effective April 1, 1923. Section 4 provides a penalty for default in making any such report and payment,

---

and section 5 imposes upon the Attorney General, etc., the duty to sue for the tax and penalty in event of default. Section 6 declares the tax to be in lieu "of all other occupation taxes on the sale of gasoline." Section 7 deals with disposition of the revenue derived. And section 8 provides that the unconstitutionality of any "section or provisions" shall not effect "the remaining sections or provisions." Section 9 includes an emergency clause, and the bill was passed with the vote necessary to put it into effect April 1, 1923.

At its second called session that Legislature passed another bill (chapter 55) levying an occupation tax upon wholesale dealers in gasoline, etc., and, in terms, repealing the statute above described. By proper emergency clause and vote this bill became effective June 1, 1923, and the "first report and payment" would have become due thereunder July 25, 1923. At its third called session (chapter 5) still another statute was enacted which levied an occupation tax upon wholesale dealers in gasoline, etc., and repealed all laws in conflict therewith. This statute became effective June 14, 1923. In the last act the Legislature undertook to save the claims for taxes, etc., which accrued under either of the previous statutes—the repeals notwithstanding.

The state, acting through its Attorney General, brought this suit to recover taxes alleged to have accrued for the months of April and May, 1923, per the terms of the statute first mentioned. The oil companies—admitting the sales and gallonage alleged as the measure of the tax—defended upon the grounds (a) that the statute is so ambiguous as to be void; (b) that if the statute has any definite meaning, its terms operate so as to produce unconstitutional inequality; and (c) that the statute was repealed by the second act so as that claims for unreported and delinquent taxes were abrogated. In reply to the latter defense, the state maintains that the taxes sued for were obligations or liabilities in its favor before the repeal took effect and perforce the terms of section 55, article 3, of the Constitution, it was beyond the power of the Legislature to release or extinguish those obligations or liabilities, even if it so intended in the repeal. Another proposition asserted by the state is that the second act is itself unconstitutional—in the parts which provide for a tax—and hence it cannot be said that the Legislature intended for the repeal to be effective at all.

The gallonage alleged included sales which, in ordinary parlance, would be understood as having been made at "wholesale," and others which would so be understood as being at "retail." The trial court allowed judgment for taxes measured only by so-called "retail sales" gallonage. The construction of the act, thus applied, had the concurrence of the Attorney General, we assume, because no appeal was prosecuted in behalf of the state. The oil companies appealed, advancing the contentions above noted, and thereupon the honorable Court of Civil Appeals expressed agreement with the trial court's construction of the first statute, but held that the repeal, embodied in the second act, so operated as to preclude assertion of claims upon which the suit is rested, reversing the judgment and rendering judgment in favor of the oil companies. (Tex. Civ. App.) 273 S. W. 615. Writ of error was allowed to the state upon assignments presenting the questions mentioned.

Section 55, article 3, of the Constitution, provides that:

"The Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguishing, in whole or in part, the indebtedness, liability or obligation of any incorporation or individual, to this state, or to any county or other municipal corporation therein."

[1] We do not stop to consider whether a delinquent tax is an "indebtedness" or "obligation," within the meaning of the language quoted, for that it is a "liability" cannot be doubted. Olliver v. City of Houston, 93 Tex. 206, 54 S. W. 940, 943; City of Henrietta v. Eustis, 87 Tex. 14, 26 S. W. 619.

[2] If the statute first mentioned competently levied a tax, that tax became due, and liability therefor matured, on May 25, 1923, in respect to the "first report and payment." This is made plain by the terms of the act fixing that date for "report and payment," and providing penalties, etc., for default. There is in the opinion of the Court of Civil Appeals a statement or implication to the effect that the claims were inchoate because the reports had not been made; but, in our opinion, no such effect can be given the taxpayers' delinquency, for that would mean the citizen who obeyed the law would be disfavorably circumstanced as compared with the citizen who disobeyed. The authority of the Legislature to extinguish claims for taxes already matured was in no sense involved in Bryan v. Harvey, 11 Tex. 311, Clegg v. State, 42 Tex. 605, or G. & W. Ry. Co. v. City of Galveston, 96 Tex. 520, 74 S. W. 537, cited as authority for the view opposing ours. So far as relevant at all, Bryan v. Harvey merely holds that the authority of the assessor and collector to execute a tax deed, which was conferred by the old statute, "was a naked power, not coupled with an interest," and was therefore subject to be and was revoked by the repealing statute. In so far as the repeal affected the rights of the state, it merely related to an incident of one of the remedies. An ad valorem tax was in question in Clegg v. State. The opinion recognized the general rule that the power to enforce such a tax rests upon a levy and an assessment—the assessment being necessary to the just apportionment of the tax burden as between the properties upon which it is imposed. In such a

case, a levy alone is not sufficient; there must be both a levy and an assessment; hence, when one of these essentials is lacking, the right to the tax may justly be regarded as being incomplete and falling short of the "liability" referred to in the Constitution. In C. & W. Ry. Co. v. Galveston there was before the court the question of whether or not a charter provision, which declared that delinquent taxes should bear interest at a certain rate, was repealed by a subsequent special statute granting a new charter. The ruling was that the Legislature did not intend to abrogate the right to collect interest, but preserved this right in the saving clause of the new statute. Legislative power itself was not presented or determined. The general rule, "that when a right depends solely upon a statute which is repealed, the right ceases to exist," must be taken with its own limitation. In the present case the right is not inchoate, for nothing remained to be done to mature the tax; and it does not "depend solely" upon a "statute which is repealed," for, having once become a liability, its irrevocable nature finds source in the constitutional provision.

[3-6] We come, then, to examination of the statute in an effort to ascertain whether it has any meaning in the due process sense and, if so, whether, as thus interpreted, it operates to produce unconstitutional inequality. In that effort, of course, we may not be concerned with the wisdom, or lack of wisdom, or the degree of burdens involved in the law. A statute is valid, or is so presumed, unless its provisions cannot be reconciled with pertinent constitutional mandates or restrictions. If it be susceptible of two interpretations, and one of them will result in its support, the meaning which will make it valid must be adopted. Maud v. Terrell, 109 Tex. 97, 200 S. W. 375. And to these ends mere lack of grammar must be disregarded, collocation may be altered, words may be given a possible (though unusual) meaning, and a "transposition of words and clauses may be resorted to when the sentence or clause is without meaning as it stands." Article 11, R. S. 1925; Maud v. Terrell, supra; Staples v. State, 112 Tex. 61, 245 S. W. 639; Murray v. State, 21 Tex. App. 620, 2 S. W. 757, 57 Am. Rep. 623; Chase v. Swayne, 88 Tex. 218, 30 S. W. 1049, 53 Am. St. Rep. 742; Trinity County v. Polk, 58 Tex. 321; United States v. Lacher, 134 U. S. 624, 10 S. Ct. 625, 33 L. Ed. 1080; Hawaii v. Mankichi, 190 U. S. 197, 23 S. Ct. 787, 47 L. Ed. 1016; 25 R. C. L. pp. 975, 976; Endlich, Interpretation of Statutes, § 295.

[7] Section 1 of the act is extremely broad in its definition of "wholesale dealer." Its terms at once suggest that no line is to be drawn between the popular meaning of "wholesale" and "retail." He, she, or it is a "wholesale dealer," if he, she, or it, as a part of intrastate commerce and in respect to gasoline, etc., does any one or more of these things,

namely: (a) "Produces;" (b) "refines;" (c) "compounds;" (d) "buys;" (e) "receives;" (f) "distributes;" (g) "delivers;" (h) "sells or offers to sell." This, of course, includes every transaction in gasoline, whether (ordinarily) at wholesale or retail, and whether purchasing, manufacturing (or producing), or selling. An apparent overabundance of caution, lest something escape, is to be found in the declaration that "a producer, refiner, manufacturer, or compounder who sells at retail direct or through an agent to the consumer" shall be regarded as a "wholesale dealer." Thus, the classes of persons who may be subject to the tax are described by reference to the fact of "producing," "refining," "compounding," "distributing," "delivering," "receiving," "buying," or "selling." But, as will be seen, the transactions by which a "wholesale dealer" may be identified as a person subject to the exaction have a wider range than those by which the amount of the tax is measured.

Section 2, wherein the levy is declared, states the dominant purpose to impose upon "every wholesale dealer" an "occupation tax" whose amount shall be equal, in "cents," to the number of gallons sold "for consumption within this state." Section 3 requires the "wholesale dealer" each month to make a verified report "of the total number of gallons * * * sold at wholesale for consumption within this state during the preceding month," and, at the same time, to pay to the state treasurer "an amount equal to one cent upon each gallon * * * so sold during the preceding month." The objection of indefiniteness is not leveled at this section; in fact, that objection, as well as the asserted inequality, proceed upon the fact, or assumption, that any person who sells gasoline, whether at "wholesale" or at "retail," or both as those terms are generally understood, is a "wholesale dealer," within the meaning of that section. But the insistence of ambiguity, as well as that of nonuniformity, relates to sections 2 and 3 as compared with section 1.

[8] The ambiguity, it is said, arises out of the use of the phrase, "for consumption within this state," as descriptive of the gallonage, or sales, by which the tax is measured. In respect to the language just quoted, an argument is made to the effect that "consumption" means "eaten up," and hence the statute imports that only "retail sales"—or sales made direct to the "consumer"—are to be taken into account, for, it is claimed, such a purchaser must be regarded as the only one who buys the commodity to "eat it up." But the term, "consume," or "consumption," does not always imply an immediate destruction or "eating up"; it may as well, and often does, contemplate the ultimate use to which all intermediate ones lead. And in relation to such an article as gasoline—whose nature is not such as to make it attractive in an heirloom or ornamental sense—it may justly be said that its

ordinary purpose at the time of original production and constantly thereafter is for "consumption," and barring exceptional cases, whoever produces it, handles it commercially, buys or sells it, does so with the thought that it is to be "consumed." A sale at "wholesale" (in its true sense) therefore may be a sale "for consumption," as much so as a sale at "retail." At least that is a possible interpretation, and, being so, it becomes our duty to apply it if that application be needed to give the statute as a whole a certain meaning or a constitutional one.

[9] It cannot be said that the words "within this state," used as immediate context of "for consumption," are fatally ambiguous. The complete phrase, "sold for consumption within this state," might, rightly, be transposed so as that it would read, "sold within this state for consumption." That transposition, we believe, illustrates the legislative purpose, for in section 1 the lawmakers were at some pains to eliminate interstate commerce transactions and to deal only with sales made "within the state of Texas." To give the words, "within this state," a meaning as modifying or relating to "sold," instead of as modifiers of "consumption," produces exact harmony between use of the same term as made in section 1 and as made in section 2. And the entire context impels us to the belief that such was the meaning the Legislature intended to convey. If this view be correct, then there is no indefiniteness or even hardship in this part of the statute. For if there be a sale, or sales, "within this state" and not "for consumption," the "dealer" is bound to know the exceptional purpose and he is at liberty to exclude the gallonage of such sales from the amount by which the tax payment is computed.

[10] But even if the transposition just suggested be not proper, a like result obtains, for then the "dealer," when he makes a sale, knows or may know whether the purpose is to "consume" the gasoline within the state. If the purpose be to "consume" it without the state, he may deduct its amount from the gallonage subsequently reported. It may be that a requirement that the dealer ascertain and record the locus of "consumption" (so that he could later make a correct report) would be burdensome, but that is a matter for consideration by the lawmakers and not by the court.

[11] With especial reference to section 3, it is said that the gallonage which must be reported, and which must be taken as the measure of the payment, includes only that "sold at wholesale." It is claimed that "wholesale" (as the terms is used here) must be given its popular meaning, so that it results in taxing a part of those rightly subject to the burden and leaves the others free. And this, it is said, produces that inequality which is condemned by section 2, article 8, of the Constitution. In our opinion, however, the word "wholesale," as used in section 3, must be taken as having the same meaning given it by section 1 and section 2. "Wholesale dealer" is (by the two sections) defined to be one who sells gasoline of any amount, whether directly to the ultimate "consumer" or to intervening middlemen. Gasoline "sold at wholesale," within the meaning of section 3, is that which is sold by those who are "wholesale dealers," within the meaning of section 1. Hence there is a uniform requirement of reports and payments and consequent equal distribution of the tax burden as between the members of the general class. For all gallonage (except that, as noted, sold for an exceptional purpose or sold for consumption without the state) must be reported and the tax paid thereon, whether the business of the "dealer" be such as would, ordinarily, be classed as "wholesale" exclusively, or "retail" exclusively, or one of "wholesale" and "retail" combined.

It results, in our opinion, that the statute is sufficiently definite in respect to the subject of the tax, its measure, and the persons who come within its obligations.

[12] So interpreted, the burdens of the statute are equally distributed as between all those pursuing the occupation of selling gasoline in intrastate commerce. Hence, there is no ground for saying that nonuniformity exists, unless it be the fact that sales made as an incident to or part of interstate commerce are excluded from those by which the tax is measured. It is true, unquestionably, that:

"If the things done constitute in one person or corporation the taxed occupation,. no one doing the same things can be omitted from the class taxed, without a violation of the constitutional provision." Pullman Palace Car Co. v. State, 64 Tex. 274, 53 Am. Rep. 758; Hoefling v. San Antonio, 85 Tex. 228, 20 S. W. 85, 16 L. R. A. 608; Rainey v. State, 41 Tex. Cr. R. 254, 53 S. W. 882, 96 Am. St. Rep. 786; Ex parte Overstreet, 39 Tex. Cr. R. 474, 46 S. W. 825; Ex parte Jones, 38 Tex. Cr. R. 482, 43 S. W. 513; Fahey v. State, 27 Tex. App. 146, 11 S. W. 108, 11 Am. St. Rep. 182; S. A. & A. P. Ry. Co. v. Wilson (Tex. App.) 19 S. W. 910; Owens v. State, 53 Tex. Cr. R. 105, 112 S. W. 1075, 126 Am. St. Rep. 772; Ex parte Woods (Tex. Cr. App.) 108 S. W. 1171; 16 L. R. A. (N. S.) 450; Poteet v. State, 41 Tex. Cr. R. 268, 53 S. W. 869.

[13] Yet the lawmakers are vested with the power reasonably to classify persons and things for the purposes of legislation (Union Central Life Insurance Co. v. Chowning, 86 Tex. 654, 26 S. W. 982, 24 L. R. A. 504; Campbell v. Cook, 86 Tex. 630, 26 S. W. 486, 40 Am. St. Rep. 878; United B. A. v. Johnson, 98 Tex. 1, 81 S. W. 18; G. C. & S. F. Ry. Co. v. Ellis, 165 U. S. 150, 17 S. Ct. 255, 41 L. Ed. 666), and its proper use does not connote a factitious equality.

[14] When that power has been used, and the classification made is in question, a court must assume that the Legislature acted on legitimate grounds of distinction, if any such

grounds exist in fact, and before it can interfere it must be able to say that there is no fair reason for the law that would not, with equal force, require its extension to others whom it leaves untouched. M. K. & T. Ry. Co. v. May, 194 U. S. 267, 24 S. Ct. 638, 48 L. Ed. 971; 6 R. C. L. pp. 384, 385. The opportunity and privilege of engaging in an interstate business is a federal right. It may not be precluded or made burdensome by state legislation.

"It must be assumed, in accordance with repeated decisions, that the state cannot lay a tax on interstate commerce 'in any form,' by imposing it either upon the business which constitutes such commerce or the privilege of engaging in it, or upon the receipts as such derived from it." Kansas City Ry. v. Botkin, 240 U. S. 227, 231, 36 S. Ct. 261, 60 L. Ed. 617.

[15, 16] Nomenclature is without importance in determining whether or not a tax burden, whatever guise it may have, unlawfully interferes with that commerce. G. H. & S. A. Ry. Co. v. State of Texas, 210 U. S. 217, 28 S. Ct. 638, 52 L. Ed. 1031. With these things in mind, the Legislature, when it came to enact this law, may properly and reasonably have judged that the inclusion of interstate sales in the measure of the tax would result in an indirect but undue burden upon the commerce which it was forbidden directly to touch. Crew Levick Co. v. Pennsylvania, 245 U. S. 292, 38 S. Ct. 126, 62 L. Ed. 295. The occupation of selling as an incident of interstate commerce, in the main at least, is governed by the law of one sovereignty, while the occupation of selling in intrastate commerce is controllable by that of another. And these things, we think, present justifiable bases for whatever classification was made in the exclusion of the one group of sales and inclusion of all others.

Accordingly, we hold, there became due and matured on May 25, 1923, a tax liability measured by the gallonage involved in all intrastate sales (excluding such, if any, as may have been made for purposes other than immediate or ultimate "consumption"), and this liability the Legislature did not (because it could not) release or extinguish by the repeal which took effect June 1, 1923.

[17] But a different question is presented in respect to tax liabilty measured by the sales made in May, 1923. That liability, if the first act had remained in force, would not have accrued or become other than inchoate until June 25, 1923. Hence it was not a "liability," within the meaning of the constitutional provision (i. e., section 55, art. 3). Up to that time it would have had a status comparable to a mere levy of an ad valorem tax without an assessment, and, thus, an essential element would have been lacking, as explained in Clegg v. State, supra, or from the constitutional viewpoint, its status might be analogized to those so-called contracts, of inchoate nature, whose obligations may be impaired despite the contract clauses. Because of this, we believe, enforcement of liability in respect to taxes for May, 1923, and under the first act, is precluded by the repeal which took effect June 1, 1923. As against this conclusion, the Attorney General maintains that all portions of the second act are unconstitutional, and therefore it may not be assumed that the Legislature intended for the repealing clause to be effective. We are inclined to the view that the statute is constitutional, but upon this point we do not express a definite opinion, for the question is not important. This is true because the third act, which became effective June 14, 1923, and whose validity seems to be admitted, in terms, repealed the second act as well as "any other law heretofore enacted levying such an occupation tax." The latter repeal, as stated, took effect June 14, 1923, whereas the second report and payment under the first act (if that act had remained in force) would not have become due until June 25, 1923, and there could not have been a default (as to taxes measured by the May, 1923, sales) prior to that date. Hence no "officer was charged with the duty under any such prior law to bring suit or collect or enforce collection in any manner of any such occupation tax, * * * accruing under any such prior law before its repeal" (Acts 3d Called Sess. 1923, c. 5, § 12), and, perforce, the tax which would have become due June 25, 1923, was not preserved by the saving clause attached to the repealing clause of the third act.

Accordingly, we recommend reversal of the judgment of the Court of Civil Appeals, and reformation of the judgment of the district court so as to allow recovery to the state as follows: Against Pioneer Oil & Gas Company, the sum of $68.50, and against A. B. Slimp and C. A. Slimp (partners, doing business in the name of "Slimp Oil Company"), the sum of $95.09, and that the judgment, as thus reformed, be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed, and judgment of the district court reformed and affirmed, as recommended by the Commission of Appeals.